1  Kirk Pasich (SBN 94242)
   KPasich@McGuireWoods.com
2  Sandra Smith Thayer (SBN 200294)
   SThayer@McGuireWoods.com
3  MCGUIREWOODS  LLP
   1800 Century Park East, 8th Floor
4  Los Angeles, California 90067
   Telephone:  (310) 315-8200
5  Facsimile:   (310) 313-8210
6
7  Attorneys for Plaintiffs
8
9              UNITED STATES DISTRICT COURT
10            CENTRAL DISTRICT OF CALIFORNIA
11

| | |
|---|---|
| 12  CETERA ADVISORS LLC, a Delaware corporation; CETERA ADVISOR NETWORKS, LLC, a Delaware corporation; and CETERA FINANCIAL GROUP, INC., a Delaware corporation; | Case No. |
| 13 | |
| 14 | **COMPLAINT FOR BREACH OF CONTRACT AND TORTIOUS BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING** |
| 15 | |
| 16                          Plaintiffs, | **DEMAND FOR JURY TRIAL** |
| 17          v. | |
| 18  ATLANTIC SPECIALTY INSURANCE COMPANY, a New York company, | |
| 19 | |
| 20                          Defendant. | |
| 21 | |

22
23        Plaintiffs Cetera Advisors, LLC ("Cetera Advisors"), Cetera Advisor
24  Networks, LLC ("Cetera Advisors Networks"), and Cetera Financial Group, Inc.
25  ("Cetera Financial Group") (together, "the Cetera Entities") hereby complain of
26  defendant Atlantic Specialty Insurance Company ("Atlantic") and allege as
27  follows:
28

---

**NATURE OF THIS LAWSUIT**

1.     The Cetera Entities seek by this action to recover amounts due under two Private Company Management Liability Policies issued by defendant Atlantic. Atlantic wrongfully and in bad faith refused to defend and/or indemnify the Cetera Entities in connection with a number of lawsuits and arbitrations filed with the Financial Industry Regulatory Authority Inc. ("FINRA").

**JURISDICTION AND VENUE**

2.     The Court has subject matter jurisdiction to hear this case under 28 U.S.C. § 1332 based on complete diversity of citizenship between the parties and because the amount in controversy, exclusive of the costs and interest, exceeds $75,000.

3.     The Court has personal jurisdiction over Atlantic because it does business in this District.

4.     Venue is proper in the Central District of California because a substantial part of the events or omissions giving rise to the Cetera Entities' claims occurred in this District.

**THE PARTIES**

5.     Cetera Advisors is a Delaware corporation with its principal place of business in Denver, Colorado.

6.     Cetera Advisor Networks is a Delaware corporation with its principal place of business in El Segundo, California.

7.     Cetera Financial Group is a Delaware corporation with its principal place of business in El Segundo, California.

8.     Atlantic is a New York Company with its principal place of business in Plymouth, Minnesota.

9.     Atlantic is part of the Intact Insurance group.  Intact represents on its website:

**COMPLAINT AND DEMAND FOR JURY TRIAL**

- "We are . . . a leading provider of global specialty insurance . . . . With the ability to write business in more than 180 countries, the breadth of our global capabilities, combined with our deep expertise in underwriting, risk control and claims provides customers . . . access to a larger team of experts, access to new markets and a wider product and solution set."[1]
- "We provide deep product and industry expertise to address unique risks for our U.S. . . . customers, all delivered through dedicated teams of insurance experts focused on a particular customer or industry group."[2]
- "Our leaders average 25+ years of experience in their segments; experience that means we can anticipate potential risks and also know how to help you minimize them—which protects your bottom line."[3]
- "We're committed to acting with integrity and with the highest of ethical standards."[4]

## ATLANTIC POLICY NO. FIN000055/0001

10.    Atlantic issued Private Company Management Liability Policy FIN000055/0001 (the "2017 Policy") to Aretec Group, Inc., the ultimate parent of the Cetera Entities. The 2017 Policy was in effect from May 23, 2017, to October 1, 2024.  It has an aggregate limit of $10,000,000 excess of a $250,000 retention. A true and correct copy of the 2017 Policy is attached hereto as Exhibit A and incorporated herein.

11.    The 2017 Policy obligates Atlantic to "pay, on behalf of the **Organization**, **Loss** from any **Organization Claim** first made against the **Organization** during the **Policy Period** or applicable Extended Reporting Period for a **Wrongful Act** . . . ."  Ex. A. § I(C).

---

[1] https://www.intactspecialty.com/en/marketing/who-we-are.page
[2] *Id.*
[3] *Id.*
[4] *Id.*

**COMPLAINT AND DEMAND FOR JURY TRIAL**

12.     The 2017 Policy defines **Organization** to include "the **Named Organization** [Aretec Group, Inc.] and, subject to the provisions of Section IX of these General Terms and Conditions, any **Subsidiary**." *Id.* § II(M). The Cetera Entities are subsidiaries of Aretec Group, Inc. and are insureds under the 2017 Policy.

13.     The 2017 Policy defines "**Loss**" to include

> (1) for purposes of coverage under Insuring Agreements (A), (B) and (C) of this Coverage Section, **Defense Expenses** and any monetary amount which an **Insured** is legally obligated to pay as a result of a covered **Claim**, including but not limited to:
>
> (a) monetary damages (including punitive or exemplary damages or the multiple portion of any multiplied damage award, to the extent such damages are insurable under the law of any jurisdiction which has a substantial relationship to the **Insureds**, this Policy or the **Claim** giving rise to such damages and which is most favorable to the insurability of such damages);
>
> (b) judgments;
>
> (c) settlements;
>
> (d) pre- and post-judgment interest; [and]
>
> (e) civil fines and penalties . . . .

*Id.,* End. 6, ¶ (2).

14.     The 2017 Policy defines "**Organization Claim**" to include, among other things: "a civil, criminal, administrative, regulatory or arbitration proceeding for monetary, non-monetary or injunctive relief commenced by: (a) the service of a complaint or similar pleading . . . ." *Id.* § II(J).

15.     The 2017 Policy defines "**Wrongful Act**" as

> (1) any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty by any Insured Person in his or her capacity as such, or any

**COMPLAINT AND DEMAND FOR JURY TRIAL**

1    matter asserted against any Insured Person solely by
2    reason of his or her status as such;

3    (2) for the purposes of Insuring Agreement (C) of this
     Coverage Section, any actual or alleged act, error,
4    omission, misstatement, misleading statement or breach
     of duty by the Organization; or
5
     (3) any actual or alleged act, error, omission,
6    misstatement, misleading statement or breach of duty by
     any Executive in his or her Outside Capacity.
7

8    *Id.* § II(R).

9        16.    The 2017 Policy defines "**Defense Expenses**" as

10    reasonable costs, charges, fees (including but not limited
      to attorneys. fees and experts. fees) and expenses
11    incurred in defending any **Claim** and the premium for
      appeal, attachment or similar bonds. **Defense Expenses**
12    does not include any remuneration, salaries, wages, fees,
      overhead or benefit expenses of any **Insured**.
13

14    *Id.* § II(B).

15        17.    The 2017 Policy also obligates Atlantic to "defend any **Claim**

16    covered under [the Policy] . . . even if the allegations of such **Claim** are

17    groundless, false, or fraudulent . . . ."  *Id.* § VI(A).

18                   **ATLANTIC POLICY NO. FIN0003070001**

19        18.    Atlantic issued Private Company Management Liability Policy

20    FIN0003070001 (the "2019 Policy") to GC Two Holdings, Inc., the ultimate

21    parent of Cetera Advisors. The 2019 Policy was in effect from December 31,

22    2019, to December 31, 2020.  The 2019 Policy provides a limit of $10,000,000 in

23    Directors, Officers & Organization Liability insurance coverage, excess of a

24    $250,000 retention.  A true and correct copy of the 2019 Policy is attached hereto

25    as Exhibit B and incorporated herein.

26        19.    The 2019 Policy obligates Atlantic to "pay, on behalf of the

27    **Organization**, **Loss** from any **Organization Claim** first made against the

28

**COMPLAINT AND DEMAND FOR JURY TRIAL**

1    **Organization** during the **Policy Period** or applicable Extended Reporting Period

2    for a **Wrongful Act** . . . .” Ex. B. § I(C).

3        20.    The 2019 Policy defines **Organization** to include “the **Named**

4    **Organization** [GC Two Holdings, Inc.] and, subject to the provisions of Section

5    IX of these General Terms and Conditions, any **Subsidiary**.” *Id.* § II(M). Cetera

6    Advisors is a subsidiary of GC Two Holdings, Inc. and is insured under the 2019

7    Policy.

8        21.    The 2019 Policy defines “**Loss**” to include

9          (1) for purposes of coverage under Insuring Agreements
10          (A), (B) and (C) of this Coverage Section, **Defense Expenses** and any monetary amount which an **Insured** is
11          legally obligated to pay as a result of a covered **Claim**, including but not limited to:

12          (a) monetary damages (including punitive or exemplary
13          damages or the multiple portion of any multiplied damage award, to the extent such damages are insurable
14          under the law of any jurisdiction which has a substantial relationship to the **Insureds**, this Policy or the **Claim**
15          giving rise to such damages and which is most favorable
16          to the insurability of such damages);

17          (b) judgments;

18          (c) settlements; and

19          (d) pre- and post-judgment interest; [and]

20          (e) civil fines and penalties . . . .

21

22    *Id.,* End. 6, ¶ (2).

23        22.    The 2019 Policy defines “**Organization Claim**” to include, among

24    other things: “a civil, criminal, administrative, regulatory or arbitration proceeding

25    for monetary, non-monetary or injunctive relief commenced by: (a) the service of a

26    complaint or similar pleading . . . . against the **Organization** for a **Wrongful**

27    **Act** . . . .” *Id.* § II(J).

28

**COMPLAINT AND DEMAND FOR JURY TRIAL**

1    23.    The 2019 Policy defines "**Wrongful Act**" as

2         . . .

3         (2) for the purposes of Insuring Agreement (C) of this
         Coverage Section, any actual or alleged act, error,

4         omission, misstatement, misleading statement or breach
         of duty by the Organization; . . . .

5

6    *Id.* § II(R).

7    24.    The 2019 Policy defines "**Defense Expenses**" as

8         reasonable costs, charges, fees (including but not limited
         to attorneys. fees and experts. fees) and expenses

9         incurred in defending any **Claim** and the premium for
         appeal, attachment or similar bonds. **Defense Expenses**

10        does not include any remuneration, salaries, wages, fees,
         overhead or benefit expenses of any **Insured**.

11

12   *Id.* § II(B).

13   25.    The 2019 Policy also obligates Atlantic to "defend any **Claim**

14   covered under [the Policy] . . . even if the allegations of such **Claim** are

15   groundless, false, or fraudulent . . . ." *Id.* § VI(A).

16   26.    The 2019 Policy also contains the following "Allocation" provision:

17        If both **Loss** covered by this Coverage Section and loss
         not covered by this Coverage Section are incurred, either

18        because a **Claim** made against the **Insureds** includes
         both covered and uncovered matters, or because a **Claim**

19        is made against both **Insureds** and others not included
         within the definition of "Insured" set forth in

20        DEFINITION (E) above, then such covered **Loss** and
         uncovered loss shall be allocated as follows:

21

22        (A) one hundred percent (100%) of **Defense Expenses**
         incurred by the **Insureds** in connection with such **Claim**

23        shall be allocated to covered **Loss**; and

24        (B) all loss, other than **Defense Expenses**, incurred by

25        the **Insureds** in connection with such **Claim** shall be
         allocated between covered **Loss** and uncovered loss

26        based upon the relative legal and financial exposures of,
         and relative benefits obtained in connection with the

27        defense and/or settlement of the **Claim** by the **Insured**
         **Persons**, the **Organization** and others. In making such a

28

**COMPLAINT AND DEMAND FOR JURY TRIAL**

determination, the **Organization**, the **Insured Persons** and the Underwriter agree to use their best efforts to determine a fair and proper allocation of all such amounts. In the event that the Underwriter and the **Insureds** do not reach an agreement with respect to an allocation, then the Underwriter shall be obligated to make an interim payment of the amount of **Loss** which the parties agree is not in dispute until a final amount is agreed upon.

## THE UNDERLYING LAWSUITS

### A.    The Legend Cases

27.    The Legend Cases consist of the following related claims against certain of the Cetera Entities and their subsidiaries or affiliates alleging that certain of the Cetera Entities and their subsidiaries or affiliates committed certain "**Wrongful Acts**" as that term is defined in the 2017 Policy:

       a.    A February 13, 2019, lawsuit titled *James Cecchini and Albert Oppedisano v. Cetera Financial Group, Inc., et al.* filed in the United States District Court for the Southern District of Florida ("*Oppedisano* I");

       b.    A January 25, 2019, Statement of Claim in a FINRA arbitration brought by Albert Oppedisano and James Louis Cecchini ("*Oppedisano* II");

       c.    An April 16, 2019, lawsuit titled *Drewes v. Cetera Holdings, Inc. et al.,* filed in the United States District Court, Southern District of Florida ("*Drewes* lawsuit"); and

       d.    An April 23, 2019, Statement of Claim filed in a FINRA arbitration by James Leos and Ivan Leos (as Trustee of the Leos Family Trust) ("*Leos* arbitration").

28.    The Cetera Entities settled all four of the Legend Cases.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**B.    The *SEC* Lawsuit**

29.    On or about August 29, 2019, the United States Securities and Exchange Commission filed the *SEC* Lawsuit against Cetera Advisors and Cetera Advisor Networks in the United States District Court for the District of Colorado.

30.    The *SEC* Lawsuit alleged that Cetera Advisors and Cetera Advisor Networks "are SEC-registered investment advisers" that "owe their advisory clients a fiduciary duty to act in their clients' best interests and to fully disclose all material facts about the advisory relationship, including disclosing any conflicts of interest that might cause them to put their own interests before those of their clients."

31.    The *SEC* Lawsuit contained allegations of "**Wrongful Acts**" as that term is defined in the 2017 Policy.

32.    On October 13, 2022, the Court in the *SEC* Lawsuit entered a Final Judgment against Cetera Advisors and Cetera Advisor Networks.

**C.    The *Fasanella* Arbitration**

33.    On or about July 29, 2020, Gerald Fasanella filed a Statement of Claim against Cetera Advisors in the *Fasanella* Arbitration, alleging that Cetera Advisors committed certain "**Wrongful Acts**" as that term is defined in the 2019 Policy.

34.    On April 27, 2022, the arbitration panel issued an award in favor of Mr. Fasanella, ordering Cetera Advisors to pay Mr. Fasanella $3,000,000 in damages, $10,000 in expert witness fees, and $375 for the FINRA Dispute Resolution Services filing fee.

**ATLANTIC'S BREACH OF ITS DUTIES**

**A.    The Legend Cases**

35.    The Cetera Entities' parent company, Aretec Group, Inc., timely notified Atlantic of the Legend Cases.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

36.     Atlantic agreed to defend the Cetera Entities in the Legend Cases,
subject to a reservation of its rights to later deny coverage and/or seek
reimbursement of amounts it paid towards the defense fees and costs.

37.     Atlantic also paid a portion of the settlements reached in the
*Oppedisano* I and II matters.  However, Atlantic refused to pay anything towards
the settlements in the *Drewes* and *Leos* matters.

### B.     The *SEC* Lawsuit

38.     The Cetera Entities timely notified Atlantic of the *SEC* lawsuit.

39.     Atlantic unreasonably and unjustly denied coverage for the *SEC*
Lawsuit, refusing to pay anything towards the Cetera Entities' defense.  Although
Cetera Advisors and Cetera Advisor Networks explained why Atlantic's denial of
coverage was erroneous and attempted to persuade Atlantic to withdraw its
erroneous denial of coverage, Atlantic refused, stating only that it "continue[s] to
reserve all rights and defenses."

### C.     The *Fasanella* Arbitration

40.     Cetera Advisors timely notified Atlantic of the *Fasanella* Arbitration.

41.     On February 23, 2021, Atlantic sent a letter to Cetera Advisors
(i) acknowledging coverage for the *Fasanella* Arbitration under Insuring
Agreement C of the 2019 Policy, (ii) agreeing to pay "100% of Defense Expenses .
. . subject to a review of reasonableness and necessity," (iii) identifying Policy
exclusions that potentially limited or precluded coverage for the *Fasanella*
Arbitration, and (iv) promising to "seek a fair allocation of covered and
[purportedly] uncovered loss" in any subsequent settlement or arbitration award in
the *Fasanella* Arbitration.

42.     However, when Cetera Advisors asked Atlantic to discuss the issue of
allocation of any indemnity in the *Fasanella* Arbitration, Atlantic refused to even
have a phone call, stating:

**COMPLAINT AND DEMAND FOR JURY TRIAL**

1        I don't think a call is necessary. . . .

2        We do not believe there is any indemnity coverage for
3   this matter and will consider a small, cost of defense type contribution.

4       43.   Atlantic also refused to respond to Cetera Advisors' request for

5   information supporting the so-called "fair and proper allocation" that Atlantic

6   promised and that the 2019 Policy required. As a result, Cetera Advisors was

7   forced to pay the entire award without assistance from Atlantic.

8       **<u>FIRST CAUSE OF ACTION</u>**

9   **(Breach of Contract: Duty to Indemnify in *Drewes* and *Leos* Matters)**

10       44.   The Cetera Entities reallege and incorporate by reference herein each

11   allegation in paragraphs 1 through 17, 27, 28, and 35 through 37 above.

12       45.   The *Drewes* and *Leos* matters seek covered "**Loss**" from the Cetera

13   Entities for alleged "**Wrongful Acts**."

14       46.   Atlantic has a duty under its 2017 Policy to indemnify the Cetera

15   Entities in the *Drewes* and *Leos* matters.

16       47.   Atlantic breached its duty by refusing to indemnify the Cetera Entities

17   in the *Drewes* and *Leos* matters.

18       48.   As a direct and proximate cause of Atlantic's breach of its duty to

19   indemnify the Cetera Entities, the Cetera Entities have been damaged in an amount

20   in excess of the Court's jurisdictional limits.

21       **<u>SECOND CAUSE OF ACTION</u>**

22   **(Breach of Contract—Duty to Defend the *SEC* Lawsuit)**

23       49.   Cetera Advisors and Cetera Advisor Networks reallege and

24   incorporate by reference herein each allegation in paragraphs 1 through 6, 8

25   through 17, 29 through 32, 38 and 39 above.

26       50.   The *SEC* Lawsuit seeks covered "**Loss**" from Cetera Advisors and

27   Cetera Advisor Networks for alleged "**Wrongful Acts**."

28

**COMPLAINT AND DEMAND FOR JURY TRIAL**

51.     Atlantic has a duty under its 2017 Policy to defend Cetera Advisors and Cetera Advisor Networks in the *SEC* Lawsuit.

52.     Atlantic breached its duty by refusing to defend Cetera Advisors and Cetera Advisor Networks in the *SEC* Lawsuit.

53.     As a direct and proximate cause of Atlantic's breach of its duty to defend Cetera Advisors and Cetera Advisor Networks, Cetera Advisors and Cetera Advisor Networks have been damaged in an amount in excess of the Court's jurisdictional limits. These damages include the defense fees and costs Atlantic is obligated to pay Cetera Advisors and Cetera Advisor Networks under the 2017 Policy.

## THIRD CAUSE OF ACTION

**(Breach of Contract—Duty to Indemnify for Portion of Judgment in the *SEC* Lawsuit)**

54.     Cetera Advisors and Cetera Advisor Networks reallege and incorporate by reference herein each allegation in paragraphs 1 through 6, 8 through 17, 29 through 32, 38 and 39 above.

55.     The *SEC* Lawsuit seeks covered "**Loss**" from Cetera Advisors and Cetera Advisor Networks for alleged "**Wrongful Acts**."

56.     Atlantic has a duty under its 2017 Policy to indemnify Cetera Advisors and Cetera Advisor Networks in the *SEC* Lawsuit.

57.     Atlantic breached its duty by refusing to indemnify Cetera Advisors and Cetera Advisor Networks for a portion of the judgment in the *SEC* Lawsuit.

58.     As a direct and proximate cause of Atlantic's breach of its duty to indemnify Cetera Advisors and Cetera Advisor Networks, Cetera Advisors, and Cetera Advisor Networks have been damaged in an amount in excess of the Court's jurisdictional limits. These damages include a portion of the judgment that Atlantic is obligated to pay Cetera Advisors and Cetera Advisor Networks under the 2017 Policy.

COMPLAINT AND DEMAND FOR JURY TRIAL

**FOURTH CAUSE OF ACTION**

**(Breach of Contract – Duty to Indemnify in the *Fasanella* Arbitration)**

59.    Cetera Advisors realleges and incorporates by reference herein each allegation in paragraphs 1 through 5, 8, 9, 18 through 26, 33, 34, and 40 through 43 above.

60.    The *Fasanella* Arbitration sought covered "**Loss**" from Cetera Advisors for alleged "**Wrongful Acts**."

61.    Atlantic has a duty under its 2019 Policy to indemnify Cetera Advisors in the *Fasanella* Arbitration.

62.    Atlantic breached its duty by refusing to indemnify Cetera Advisors in the *Fasanella* Arbitration.

63.    As a direct and proximate cause of Atlantic's breach of its duty to indemnify Cetera Advisors, Cetera Advisors has been damaged in an amount in excess of the Court's jurisdictional limits.

**FIFTH CAUSE OF ACTION**

**(Tortious Breach of the Implied Covenant of**

**Good Faith and Fair Dealing—2017 Policy)**

64.    The Cetera Entities reallege and incorporate by reference herein paragraphs 1 through 17, 27 through 32, 35 through 39, 45 through 48, and 50 through 53, and 55 through 58 above.

65.    Implied in the 2017 Policy is a covenant that Atlantic would act in good faith and deal fairly with the Cetera Entities, that Atlantic would do nothing to interfere with the Cetera Entities' rights to receive benefits due under the 2017 Policy, and that Atlantic would give at least the same level of consideration to the Cetera Entities' interests as it gives its own interests.  Instead of complying with these duties, Atlantic acted in bad faith by, among other things,

- Failing to conduct a full and thorough investigation of the *Drewes*, *Leos,* and *SEC* matters;

13

- Failing to fully inquire into all possible bases that might support coverage for the Cetera Entities for the *Drewes* and *Leos* matters;

- Failing to fully inquire into all possible bases that might support coverage for Cetera Advisors and Cetera Advisor Networks for the *SEC* lawsuit;

- Unreasonably refusing to defend Cetera Advisors and Cetera Advisor Networks in the *SEC* lawsuit;

- Unreasonably refusing to indemnify Cetera Advisors and Cetera Advisor Networks for a portion of the judgment in the *SEC* lawsuit;

- Unreasonably refusing to indemnify the Cetera Entities in the *Drewes* and *Leos* matters; and

- Otherwise acting as alleged above.

66.    In breach of the implied covenant of good faith and fair dealing, Atlantic engaged in the conduct alleged above for the purpose of consciously withholding from the Cetera Entities the rights and benefits to which the Cetera Entities are entitled under the 2017 Policy and without considering the Cetera Entities' interests at least to the same extent as it considered its own interests.

67.    Atlantic's conduct is inconsistent with the Cetera Entities' reasonable expectations, is contrary to insurance industry custom and practice, is contrary to legal requirements, and constitutes bad faith.

68.    As a direct and proximate result of Atlantic's breach of the implied covenant of good faith and fair dealing, the Cetera Entities have sustained, and continue to sustain, damages in an amount in excess of the Court's jurisdictional limits to be proven at trial. These damages include the defense fees and costs that Atlantic is obligated to pay Cetera Advisors and Cetera Advisor Networks under the 2017 Policy and the settlements in the *Drewes* and *Leos* matters.  Also, pursuant to *Brandt v. Superior Court,* 37 Cal. 3d 813 (1985), the Cetera Entities are entitled to recover all attorneys' fees and expenses that they have reasonably incurred, and are incurring, in their efforts to obtain the benefits due under the

COMPLAINT AND DEMAND FOR JURY TRIAL

1    2017 Policy that Atlantic wrongfully has withheld, and is withholding, in bad

2    faith. The Cetera Entities also are entitled to interest at the maximum legal rate.

3         69.    The Cetera Entities are informed and believe, and on that basis

4    alleges, that Atlantic, acting through one or more of its officers, directors, or other

5    corporate employees with substantial independent and discretionary authority over

6    significant aspects of Atlantic's business, performed, authorized, and/or ratified

7    the bad faith conduct alleged above.

8         70.    Atlantic's conduct is contemptable and has been done with a

9    conscious disregard of the Cetera Entities' rights, constituting oppression, fraud,

10    and/or malice. Atlantic engaged in a series of acts designed to deny the Cetera

11    Entities the benefits due under the 2017 Policy. Specifically, Atlantic, by acting as

12    alleged above, in light of information, facts, and relevant law to the contrary,

13    consciously disregarded the Cetera Entities' rights and forced the Cetera Entities to

14    incur substantial financial losses, without any assistance from it, thereby inflicting

15    substantial financial damage on the Cetera Entities. Atlantic ignored the Cetera

16    Entities' interests and concerns, with the requisite intent to injure within the

17    meaning of California Civil Code section 3294. Therefore, the Cetera Entities are

18    entitled to recover punitive damages from Atlantic in an amount sufficient to

19    punish and to make an example of Atlantic in order to deter similar conduct.

20    **SIXTH CAUSE OF ACTION**

21    **(Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing**

22    **in the *Fasanella* Arbitration Under the 2019 Policy)**

23         71.    Cetera Advisors realleges and incorporates by reference herein paragraphs

24    1 through 5, 8, 9, 18 through 26, 33, 34, 40 through 43, and 60 through 63 above.

25         72.    Implied in the 2019 Policy is a covenant that Atlantic would act in

26    good faith and deal fairly with Cetera Advisors, that Atlantic would do nothing to

27    interfere with Cetera Advisors' rights to receive benefits due under the 2019

28    Policy, and that Atlantic would give at least the same level of consideration to

15
COMPLAINT AND DEMAND FOR JURY TRIAL

Cetera Advisors' interests as it gives its own interests.  Instead of complying with these duties, Atlantic acted in bad faith by, among other things,

- Failing to conduct a full and thorough investigation of the *Fasanella* Arbitration;

- Failing to fully inquire into all possible bases that might support coverage for Cetera Advisors for the *Fasanella* Arbitration;

- Failing and refusing to comply with its obligation under the 2019 Policy, and its promise to Cetera Advisors, to "use [its] best efforts to determine a fair and proper allocation of" covered and purportedly uncovered portions of any indemnity in the *Fasanella* Arbitration;

- Unreasonably refusing to indemnify Cetera Advisors in the *Fasanella* Arbitration; and

- Otherwise acting as alleged above.

73.    In breach of the implied covenant of good faith and fair dealing, Atlantic engaged in the conduct alleged above for the purpose of consciously withholding from Cetera Advisors the rights and benefits to which Cetera Advisors is entitled under the 2019 Policy and without considering Cetera Advisors' interests at least to the same extent as it considered its own interests.

74.    Atlantic's conduct is inconsistent with Cetera Advisors' reasonable expectations, is contrary to insurance industry custom and practice, is contrary to legal requirements, and constitutes bad faith.

75.    As a direct and proximate result of Atlantic's breach of the implied covenant of good faith and fair dealing, Cetera Advisors has sustained, and continues to sustain, damages in an amount in excess of the Court's jurisdictional limits to be proven at trial. These damages include the award in the *Fasanella* Arbitration.  Also, pursuant to *Brandt v. Superior Court,* 37 Cal. 3d 813 (1985), Cetera Advisors is entitled to recover all attorneys' fees and expenses that it has reasonably incurred, and is continuing to incur, in its efforts to obtain the benefits due under the 2019

**COMPLAINT AND DEMAND FOR JURY TRIAL**

1  Policy that Atlantic wrongfully has withheld, and is withholding, in bad faith. Cetera

2  also is entitled to interest at the maximum legal rate.

3    76.    Cetera Advisors is informed and believes, and on that basis alleges,

4  that Atlantic, acting through one or more of its officers, directors, or other

5  corporate employees with substantial independent and discretionary authority over

6  significant aspects of Atlantic's business, performed, authorized, and/or ratified

7  the bad faith conduct alleged above.

8    77.    Atlantic's conduct is contemptable and has been done with a

9  conscious disregard of Cetera Advisors' rights, constituting oppression, fraud,

10  and/or malice. Atlantic engaged in a series of acts designed to deny Cetera

11  Advisors the benefits due under the 2019 Policy. Specifically, Atlantic, by acting

12  as alleged above, in light of information, facts, and relevant law to the contrary,

13  consciously disregarded Cetera Advisors' rights and forced Cetera Advisors to

14  incur substantial financial losses, without any assistance from it, thereby inflicting

15  substantial financial damage on Cetera Advisors. Atlantic ignored Cetera

16  Advisors' interests and concerns, with the requisite intent to injure within the

17  meaning of California Civil Code section 3294. Therefore, Cetera Advisors is

18  entitled to recover punitive damages from Atlantic in an amount sufficient to

19  punish and to make an example of Atlantic in order to deter similar conduct.

20                    **PRAYER FOR RELIEF**

21    WHEREFORE, the Cetera Entities pray for relief as follows:

22            **ON THE FIRST CAUSE OF ACTION**

23    1.    For damages, plus interest, according to proof at the time of trial;

24            **ON THE SECOND CAUSE OF ACTION**

25    2.    For damages, plus interest, according to proof at the time of trial;

26            **ON THE THIRD CAUSE OF ACTION**

27    3.    For damages, plus interest, according to proof at the time of trial;

28

17

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**ON THE FOURTH CAUSE OF ACTION**

4.    For damages, plus interest, according to proof at the time of trial;

**ON THE FIFTH CAUSE OF ACTION**

5.    For damages, including attorneys' fees and expenses incurred in obtaining the benefits due under the 2017 Policy, plus interest, according to proof at the time of trial;

6.    For punitive damages in an amount to be determined at the time of trial;

**ON THE SIXTH CAUSE OF ACTION**

7.    For damages, including attorneys' fees and expenses incurred in obtaining the benefits due under the 2019 Policy, plus interest, according to proof at the time of trial;

8.    For punitive damages in an amount to be determined at the time of trial;

**ON ALL CAUSES OF ACTION**

9.    For costs of suit incurred herein; and

10.    For such other, further, and/or different relief as may be just and proper.

DATED:  November 15, 2024        MCGUIREWOODS LLP


By:    */s/ Sandra Smith Thayer*
        Sandra Smith Thayer

        Attorneys for Plaintiffs

**COMPLAINT AND DEMAND FOR JURY TRIAL**

1    **DEMAND FOR JURY TRIAL**

2    Plaintiffs Cetera Advisors LLC, Cetera Advisor Networks LLC and Cetera

3    Financial Group, Inc. hereby demand a trial by jury in this action.

4    DATED:  November 15, 2024          MCGUIREWOODS LLP

5

6    By: ___*/s/ Sandra Smith Thayer*___
     Sandra Smith Thayer

7    Attorneys for Plaintiffs

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT AND DEMAND FOR JURY TRIAL**